**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 20-1805**

―――――――――

SHELLY ANN LEE,

Plaintiff - Appellant,

v.

BELVAC PRODUCTION MACHINERY, INC.,

Defendant - Appellee.

―――――――――

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg.  Norman K. Moon, Senior District Judge.  (6:18-cv-00075-NKM-RSB)

―――――――――

Submitted:  August 31, 2022                    Decided:  October 4, 2022

―――――――――

Before NIEMEYER, THACKER, and QUATTLEBAUM, Circuit Judges.

―――――――――

Affirmed by unpublished per curiam opinion.

―――――――――

**ON BRIEF:** Thomas E. Strelka, Brittany M. Haddox, STRELKA EMPLOYMENT LAW, Roanoke, Virginia, for Appellant.   Robert F. Redmond, Robert W. Loftin, MCGUIREWOODS LLP, Richmond, Virginia; David L. Greenspan, John E. Thomas, Jr., MCGUIREWOODS LLP, Tysons, Virginia, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Shelly Ann Lee filed a complaint, alleging that her former employer, Belvac Production Machinery, Inc. ("Belvac"), paid her less as its Controller than it did her predecessor, Paul DiTomasso, because of her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). She further alleged that Belvac retaliated against her for engaging in protected activity, in violation of Title VII and the EPA. The district court granted Belvac's motion for summary judgment and denied Lee's motion for sanctions under Fed. R. Civ. P. 37(e).[1] We affirm.

"This Court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020) (cleaned up). "To

---

[1] The district court also granted Belvac's motion for summary judgment on Lee's intentional and negligent infliction of emotional distress claims. But Lee does not challenge that decision on appeal. *See Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 433 (4th Cir. 2020) (deeming argument not raised in opening brief waived), *cert. denied*, ___ S. Ct. ___, No. 20-7234 (U.S. May 24, 2021).

2

create a genuine issue for trial, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

"To establish a prima facie case under the EPA, a plaintiff must demonstrate: (1) the employer paid different wages to an employee of the opposite sex, (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 196 (4th Cir. 2019). Under this standard, a plaintiff must show that she and her comparators had "virtually identical jobs," which requires more than a showing that they held "the same title and the same general responsibilit[ies]." *Id.* "Once a plaintiff establishes a prima facie case of discrimination under the EPA, the burdens of production and persuasion shift to the defendant-employer to show that the wage differential was justified by one of the statutory defenses." *Id.* at 196 n.6. These defenses are: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

To establish a prima facie claim of sex-based wage discrimination under Title VII, a plaintiff may proceed either through direct evidence of discrimination or under the *McDonnell Douglas*[2] burden-shifting framework. *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). When proceeding under the burden-shifting framework, a

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

3

plaintiff must show that "(1) she is a member of a protected class, (2) she was performing her job satisfactorily, (3) an adverse employment action occurred, and (4) the circumstances suggest an unlawfully discriminatory motive." *Id.* "Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory explanation for the wage disparity," which the plaintiff must then prove "is merely pretextual for invidious discrimination." *Id.* at 208.

"Where, as here, the prima facie case of wage discrimination is based on comparators, the plaintiff must show that she is paid less than men in similar jobs." *Id.* at 207. In contrast to the EPA, a plaintiff proceeding under Title VII is required to show only that her job and the proposed comparators' jobs are "similar rather than equal"; however, she still must show that "the proposed comparators are not just similar in some respects, but similarly-situated in all respects." *Id.* (cleaned up). In determining whether two jobs are sufficiently similar, "courts consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications— provided the employer considered these latter factors in making the personnel decision." *Id.* (internal quotation marks omitted).

We conclude that the district court correctly determined that there was no genuine issue of material fact as to whether Lee and DiTomasso held the same or similar positions at Belvac. They did not. The overwhelming evidence in the record establishes that the job description was not controlling and that DiTomasso performed different duties as Controller than Lee did. *See EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018)

4

(explaining that "sharing a job title and job description is not dispositive" as to whether claimant and comparator "performed substantially equal work"). Although there is no dispute that Lee did not receive a raise, it is apparent that her shift from Accounting Manager to Controller was a title change as part of the restructuring of the company and not a promotion. Accordingly, because Lee did not present evidence whereby a reasonable factfinder could conclude that Lee's Controller position at Belvac was sufficiently similar to DiTomasso's Controller position at Belvac, the district court correctly determined that Lee failed to establish a prima facie case of sex-based wage discrimination under Title VII or the EPA.

"A plaintiff may prove a Title VII [or EPA] retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 122 (4th Cir. 2021). To establish a prima facie case of retaliation under the burden-shifting framework, a plaintiff must show that (1) she "engaged in protected activity"; (2) the "employer took an adverse action against [her]"; and (3) "a causal relationship existed between the protected activity and the adverse employment activity." *Id.* (internal quotation marks omitted). Once a plaintiff establishes her prima facie case, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.* (citation omitted).

5

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004); *see Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) ("Constructive discharge is an adverse employment action."). "A claim for constructive discharge has two elements. First, a plaintiff must show that [her] working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. Second, a plaintiff must actually resign because of those conditions." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211-12 (4th Cir. 2019) (cleaned up). "Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Id.* at 212 (internal quotation marks omitted). Rather, "intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt *compelled* to resign[—]that is, whether [s]he would have had *no choice* but to resign." *Id.* (internal quotation marks omitted). "[D]ifficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign." *Id.*

While there is no dispute that Lee engaged in protected activity, we agree with the district court that Belvac did not create an environment whereby Lee's only choice was to resign. Accordingly, because Lee failed to establish that her voluntary resignation was

6

actually a constructive discharge, she did not state a prima facie case of retaliation under Title VII or the EPA.

Finally, we review for abuse of discretion a district court's decision to deny a motion for an adverse-inference jury instruction, and "the party disputing the district court's ruling[] bears the burden of establishing spoliation." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013); *see id.* at 281. The alleged spoliation of the electronically stored information at issue here is governed by Rule 37(e). *See Wall v. Rasnick*, 42 F.4th 214, 222-23 (4th Cir. 2022). We conclude that the district court did not abuse its discretion in denying the motion for an adverse-inference jury instruction. There is insufficient evidence in the record to establish the intent necessary to justify such an instruction or to submit the issue of intent to a jury.

Finding no reversible error, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*